**IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF COLORADO**

CIVIL ACTION NO. 19-CV-01849-WJM-NRN

JOHN S. WILSON,
        Plaintiff,

v.

XIANT TECHNOLOGIES, INC.,
        Defendant.

---

**DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS COMPLAINT**

---

**STATEMENT UNDER PRACTICE STANDARD III.D.**

Pursuant to Practice Standard III.D.1, undersigned counsel conferred with Plaintiff's counsel in person at the Court's August 2, 2019 Scheduling Conference to determine whether the basis for this Motion can be corrected by amendment.  Xiant does not base this Motion on pleading defects that Plaintiff can cure by amendment and thus proceeded with this Motion.

Pursuant to Practice Standard III.D.3, <u>Exhibit A</u> is a public record showing Plaintiff's lack of securities licensure.  A "court may properly consider facts subject to judicial notice . . . and matters of public record without converting a motion to dismiss into a motion for summary judgment."  <u>Allen v. Clements</u>, 930 F. Supp.2d 1252, 1258 (D. Colo. 2013).  The Court should not convert the Motion.

**INTRODUCTION**

Plaintiff's Complaint claims entitlement to a commission from a "massive equity deal" for a percentage ownership in Xiant and a warrant to exercise additional percentage ownership.  Plaintiff claims to have brokered this securities transaction.  Xiant categorically denies those

claims but that dispute need not consume the Court's resources.  Taken as true, the Complaint claims that Plaintiff acted as an unlicensed and unregistered securities broker-dealer and investment adviser, violating federal and state securities laws.  Each claim in the Complaint seeks a commission for illegal services.  The common law illegality doctrine and 15 U.S.C. § 78cc(b) bar every claim in Plaintiff's Complaint.  The Court should dismiss the Complaint, with prejudice.

## ARGUMENT

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Brickert v. Deutsche Bank, 380 F. Supp.3d 1127, 1134 (D. Colo. 2019)(citing Iqbal and Twombly).  Plaintiff cannot plausibly state a contractual or equitable obligation that does not violate federal and state statutes.

## I.   COLORADO LAW GOVERNS THIS CASE

In diversity actions the Court applies "the substantive law of the forum state, including its choice-of-law rules."  Pepsi–Cola Bottling v. Pepsico, 431 F.3d 1241, 1255 (10th Cir. 2005).

> In contract actions, Colorado applies the "most significant relationship" test under the Restatement § 188 to determine which state's law should apply.  Thus, the court considers (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of the business of the parties. The contacts are to be evaluated in accordance to their relative importance in light of the particular issue.

Wells Fargo v. McQuate, 276 F. Supp.3d 1089, 1103-04 (D. Colo. 2016).  Similar factors govern choice of law for unjust enrichment claims.  See Barnett v. Surefire Med., 342 F. Supp.3d 1167, 1174 (D. Colo. 2018).

Plaintiff's Complaint hedges over where his alleged contract arose but confirms that, after prefatory web searches and phone calls, Plaintiff traveled to Greeley, Colorado, to meet Xiant at

its headquarters.  Doc. 1-1, ¶ 16.  Defendant claims to have performed services for Xiant and Xiant could only benefit from that performance in Greeley.  Defendants claims entitlement to a commission which Xiant could only pay from Greeley.  As the Tennessee court found, "Tennessee was not a 'conduit' for [Xiant's] business" and Xiant had "no intent to undertake continuing obligations within Tennessee."  Doc. 23 at 12.  So Colorado has the most significant relationship and Colorado law governs.

## II.   PLAINTIFF MAY NOT OBTAIN CONTRACTUAL OR EQUITABLE RECOVERY BY ALLEGING AN AGREEMENT THAT VIOLATES STATUTES

"Any contract that fails to comply with statutory requirements is void under Colorado law."  Harper v. Mancos Sch. Dist., 837 F. Supp.2d 1211, 1222 (D. Colo. 2011).  "Contracts in violation of statutory prohibitions are void."  Amadeus Corp. v. McAllister, 232 P.3d 107, 109 (Colo. App. 2009).  For example, it "is well settled that an agreement to compensate an unlicensed real estate broker is illegal and unenforceable."  Id.  The Amadeus court rejected a plaintiff's claim to a 5% "finder's fee" because the plaintiff, an unlicensed real estate broker, claimed the fee for performing brokerage services.  Id.   "The general rule is that where a statute expressly forbids a party from entering into a contract until performance of a precedent act and imposes a penalty on such party for attempting to enter into a forbidden contract, the contract is void ab initio."  Platt v. Aspenwood Condominium Ass'n, 214 P.3d 1060, 1066 (Colo. App. 2009).

And "equitable doctrines may not be used to enforce an illegal or void agreement."  Harding v. Heritage Health Prods., 98 P.3d 945, 949 (Colo. App. 2004).  In such cases "'neither party to the contract is estopped from questioning it merely because the other party has parted with a property right or rendered service in reliance upon it.'"  Id. (citation omitted).  So "equitable

3

doctrines such as promissory estoppel may not be used to enforce an agreement in favor of a wrongdoer." Equitex v. Unger, 60 P.3d 746, 750 (Colo. App. 2002). And as applied to quantum meruit claims "[c]ompensation for services is not recoverable where the subject transaction is forbidden by law." Amadeus, 232 P.3d at 113.

"A court will not enforce a contract that violates public policy even if the failure to do so is 'unfair' to one of the parties: 'Countless instances might be cited where because of the refusal to enforce contracts which are against public policy one of the parties is left in a peculiarly advantageous position, or the contrary. With that fact the courts do not concern themselves.'" Equitex, 60 P.3d at 750.[1]

## III.   THE COMPLAINT ALLEGES ILLEGAL OBLIGATIONS

### A.   The Complaint Alleges Plaintiff Violated Federal Securities Laws

Plaintiff's Complaint seeks compensation for acting as an unregistered broker and investment adviser in violation of federal securities laws. Under § 15(a)(1) of the Securities Exchange Act of 1934 (**"Exchange Act"**):

> It shall be unlawful for any broker or dealer which is either a person other than a natural person or a natural person not associated with a broker or dealer which is a person other than a natural person . . . to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered in accordance with subsection (b) of this section.

---

[1] In Roberts v. Financial Technology, a Tennessee federal court noted that the "plaintiff seeks to enforce his illegal promise under contract, promissory estoppel, and *quantum meruit* causes of action." 2007 WL 3125289, *11 (M.D. Tenn. 2007). "Each one of these claims fails," the court held, because "'[a] contract made contrary to public policy or against the express mandate of a statute may not serve as the foundation of any action, either in law or in equity.'" Id. (citation omitted). "'No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out.'" Id.

15 U.S.C. § 78o(a)(1).[2]  And under the Investment Advisers Act of 1940 (**"Investment Advisers Act"**), "it shall be unlawful for any investment adviser, unless registered under this section, to make use of the mails or any means or instrumentality of interstate commerce in connection with his or its business as an investment adviser."  15 U.S.C. § 80b-3(a).

While registered before, Plaintiff has had no registration under the Exchange Act, Investment Advisers Act, or in any state since 2015.  See Exhibit A.[3]  Yet his Complaint seeks compensation for services beginning in 2017 covered by both Acts.  In other words, the Complaint seeks to enforce an illegal agreement.

### 1.    The Complaint Claims Plaintiff Acted as a "Broker" Under the Exchange Act

Plaintiff seeks to recover a commission for effecting a securities transaction, meaning he claims unregistered broker status under the Exchange Act.  "The term 'broker' means any person engaged in the business of effecting transactions in securities for the account of others."  15 U.S.C. § 78c(a)(4)(A).  "The definition of 'broker' employed by § 78c(a)(4) is broad, and includes acts which generally serve to encourage investors to purchase securities."  George K. Baum Advisors v. Sprint Spectrum, 2013 WL 5719506, *16 (D. Kan. 2013).  See also S.E.C. v. George, 426 F.3d 786, 797 (6th Cir. 2005)(person who "encouraged people to invest" in securities was a broker, even though not employed by seller).

---

[2] The statute exempts brokers engaging solely in intrastate business and certain commercial paper and banker's acceptances, but those exemptions do not apply here.

[3] Exhibit A is public record of the Financial Industry Regulatory Authority, Inc. (FINRA), which publishes federal and state registration and licensing information.

DN 3477261.1

Courts consider several factors in determining what meets this definition including

(i) whether the person works as an employee of the securities' issuer; (ii) whether he receives a commission rather than a salary; (iii) whether he sells or has sold the securities of another issuer; (iv) whether he participates in negotiations between the issuer and investor; (v) whether he provides advice or a valuation as to the merit of an investment; and (vi) whether he actively, rather than passively, finds investors.

Sun River Energy v. Nelson, 2013 WL 1222391, *5 (D. Colo. 2013).  See also George, 426 F.3d at 797; S.E.C. v. Hansen, 1984 WL 2413, *10 (SN.Y. 1984).  Key "activities that indicate that a person may be acting as a 'broker' are: (1) solicitation of investors to purchase securities; (2) involvement in negotiations between the issuer and the investor; and (3) receipt of transaction based compensation."  S.E.C. v. StratoComm, 2 F. Supp.3d 240, 262 (N.D.N.Y. 2014).  But all courts need to find a person a "broker" is that the person "was regularly involved in communications with and recruitment of investors for the purchase of securities."  Id.  In S.E.C. v. Parrish, 2012 WL 4378114 (D. Colo. 2012), the court found that an individual "acted as an unregistered broker-dealer in violation of Section 15(a)(1) of the Exchange Act" solely because he "directly solicited investors, receiv[ed] transaction-based compensation, and indirectly solicited investors."  Id. at *4.

The Complaint alleges Plaintiff is "a former investment banker, is a highly regarded financial commentator and author whose work has included . . . a subscription-based investing blog."  Doc. 1-1, ¶ 6.  According to the Complaint, Plaintiff helped Xiant solicit investors to purchase an equity interest in Xiant.  See id. ¶¶ 8, 13.  The Complaint alleges Plaintiff recruited investors in Xiant.  See id. ¶ 13.  Plaintiff claims to have solicited Cal-Maine's investment in Xiant, and Plaintiff claims to have been involved in negotiations for that investment.  Id. ¶¶ 18, 31.  And

6

the Complaint alleges Plaintiff's involvement in negotiations between Xiant and Cal-Maine led to "a massive equity deal" in which Cal-Maine invested in Xiant.  Id. ¶ 19.

Persons who "plainly were not employees" of their clients and who provide "consulting services" qualify as brokers.  S.E.C. v. Martino, 255 F. Supp.2d 268, 283 (S.D.N.Y. 2003).  See also Hansen, 1984 WL at *11 (finding violation of Exchange Act's broker provision because person "was not a salaried [] employee, but rather received commissions").  Plaintiff claims he provided consulting services to Xiant, but does not claim he was Xiant's employee (he was not).

Persons with a "'history of selling the securities of other issuers, involvement in advice to investors and active recruitment of investors'" must register as a broker under the Exchange Act.  George, 426 F.3d at 797.  Other activities subjecting litigants to broker registration requirements include "'analyzing the financial needs of an issuer, recommending or designing financing methods, involvement in negotiations, discussion of details of securities transactions, making investment recommendations, and prior involvement in the sale of securities.'"  Salamon v. Teleplus Enterprises, 2008 WL 2277094, at *8 (D.N.J. 2008)(citing cases).

Until 2015 Plaintiff was registered as a securities broker.  See Exhibit B.  And he claims to be "a former investment banker" and "highly regarded financial commentator."  Doc. 1-1, ¶ 6.  And Plaintiff claims to have analyzed Xiant's financial needs and designed financing methods.  See id., ¶ 13.

Among all these factors, "[t]ransaction-based compensation, or commissions are one of the hallmarks of being a broker-dealer."  Cornhusker Energy Lexington v. Prospect Street Ventures, 2006 WL 2620985, *6 (D. Neb. 2006).  See also Landegger v. Cohen, 2013 WL 5444052, *5 (D. Colo. 2013)("courts have also held that the transaction-based compensation factor, is one of the

hallmarks of broker status"); <u>Sun River</u>, 2013 WL 1222391, *5 (same).  In the Complaint, Plaintiff

seeks a transaction-based commission for his brokerage services.  Doc. 1-1, ¶¶ 14, 16, 21-22, 26,

35, 41-42, 45, 50, 56, 60, 63-67, 70-72.  The Complaint alleges Plaintiff acted as a broker.

### 2.  The Complaint Claims Plaintiff Acted as an "Investment Adviser" Under the Investment Advisers Act

> "Investment adviser" means any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities.

15 U.S.C. § 80b-2(10).  "Thus, if a person receives an economic benefit from a business that

includes the giving of investment advice, that person falls within the initial, broad definition of

'investment adviser.'"  <u>Thomas v. Metropolitan Life Ins.</u>, 631 F.3d 1153, 1164 (10th Cir. 2011).

"This definition is sufficiently broad to 'cover every person who for compensation gives advice

with respect to securities, from the highest grade investment counselor who renders personalized

service to the publisher of the lowliest tipster sheet.'"  <u>Johnston v. CIGNA</u>, 916 P.2d 643, 647

(Colo. App. 1996)(citation omitted).  <u>See also</u> <u>S.E.C. v. Blavin</u>, 760 F.2d 706, 713 (6th Cir.

1985)("Because Blavin failed to register with the Commission, he was prohibited from selling

investment advice, and was not entitled to keep the fees").

Plaintiff claims to have advised Xiant as to the value of its securities.  Doc. 1-1, ¶¶ 13, 20.

Plaintiff also claims to have advised Xiant as to the advisability of selling its securities.  <u>See id.</u>,

¶¶ 13, 18, 20.  The Complaint alleges Plaintiff acted as an investment adviser.

### 3.    The Complaint Claims Plaintiff Used Interstate Commerce to Effect Securities Transactions

A "security" under the Exchange Act includes any "investment contract."   15 U.S.C. § 78c(10).   An "investment contract" under this definition means "'(1) an investment, (2) in a common enterprise, (3) with a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others.'"   S.E.C. v. Scoville, 913 F.3d 1204, 1220 (10th Cir. 2019)(citation omitted).   See also Stone v. Kirk, 8 F.3d 1079, 1085 (6th Cir. 1993).   "The federal definition of securities . . . is purposely broad 'to regulate investments, in whatever form they are made and by whatever name they are called.'"   People v. Thompson, 2018 WL 2976280, *3 (Colo. App. 2018)(citing Reves v. Ernst & Young, 494 U.S. 56, 61 (1990)).   Congress made the definition "broad enough to regulate 'virtually any instrument that might be sold as an investment.'"   S.E.C. v. Zada, 787 F.3d 375, 379 (6th Cir. 2015)(citation omitted).

Plaintiff claims to have performed services resulting in "a massive equity deal that could equal or exceed all equity investments made prior to Plaintiff's involvement."   Doc. 1-1, ¶ 19. "Specifically," Plaintiff claims to have effectuated a transaction in which "Cal-Maine paid Xiant Technology $4.5 Million in exchange for a certain percentage of the company with a contingent warrant to exercise an additional purchase of $4.5 Million for a total deal value of $9 Million." Id., ¶ 21.   A "percentage of the company" is synonymous with investment in a common enterprise (by Cal-Maine) with a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others (Xiant).   A "warrant" means an "instrument granting the holder a long-term . . . option to buy shares at a fixed price.   It is commonly attached to preferred stocks or bonds."   Black's Law Dictionary (11th ed. 2019).   Plaintiff claims to have engaged in these efforts

9

in Colorado and Kansas.  Doc. 1-1, ¶¶ 16-19.  In other words, Plaintiff claims to have used

interstate commerce to effect securities transactions and seeks recovery, without registration, for

those transactions in his Complaint.

**B.**     **Along with Common Law Illegality, the Complaint Alleges a Contract Barred by Federal Statute**

The Exchange Act mandates dismissal.  Under § 29(b) of the Exchange Act

> Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract . . . heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void . . . as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract.

15 U.S.C. § 78cc(b).

In <u>Torsiello Capital Partners v. Sunshine State Holding</u>, 2008 WL 8971330 (N.Y. 2008), a

plaintiff sued a corporation under an alleged contract for the plaintiff's financial advisory and

investment services.  <u>See id.</u> at *1.  The plaintiff claimed to have "made numerous telephone calls

to potential purchasers, and held meetings with some of the potential purchasers" and, after the

corporation sold its stock, the plaintiff claimed entitlement to 3.5% of the sale price.  <u>Id.</u> at *2.

The corporation asserted illegality and § 29(b) defenses, arguing the plaintiff "could not legally

perform the services that it agreed to perform because it was not a registered securities broker

during the contract term and that therefore the contract is void and unenforceable pursuant to

Section 29 of the" Exchange Act.  <u>Id.</u> at *3.  The court agreed, holding the plaintiff "was retained

to act, and did act, as a securities broker with regard to the marketing and proposed private sale of

[the corporation's] securities."  <u>Id.</u> at *9.  The court stressed that the contract provided "a fee based

on a percentage of the gross value of any securities transaction."  <u>Id.</u>  "Inasmuch as the contract

required [the plaintiff] to provide the types of services that require licensing by the SEC as a securities broker, and they did perform such services while not so licensed, the contract is void ab initio" under § 29(b). <u>Id.</u> at *11. And the plaintiff's "failure to register as a securities broker also renders the contract unenforceable under the common law doctrine of illegality." <u>Id.</u> at **12-13.

Likewise, the Complaint here claims Plaintiff made calls and arranged meetings with potential Xiant investors and seeks a percentage of the equity investment. But Plaintiff could not legally perform these services because he was not a registered securities broker during the alleged contract term, so § 29(b) voids the alleged contract and renders it unenforceable. The alleged contract provided a fee based on a percentage of the gross value of the alleged securities transaction. Because the alleged contract required Plaintiff to provide the types of services that require licensing by the SEC as a securities broker, and Plaintiff allegedly performed such services while unlicensed, the alleged contract is void ab initio under § 29(b) and the illegality doctrine.

In <u>Lawrence v. Richman Group</u>, 407 F. Supp.2d 385 (D. Conn. 2005), a plaintiff sued a company for breach of contract, unjust enrichment, and related claims, alleging breach of an agreement for investment services "thus depriving him of commissions to which he is entitled." <u>Id.</u> at 386. The alleged contact, "based on oral and written communications" involved the plaintiff introducing the company to investors. <u>Id.</u> at 388 n.4. But the plaintiff "was 'not registered as a broker[ ] in accordance with all applicable federal and state laws.'" <u>Id.</u> at 389. "Accordingly," the court ruled, "the contract plaintiff alleges . . . violates 15 U.S.C. § 78o(a)(1), is thus void pursuant to 15 U.S.C. § 78cc(b)." The court dismissed the plaintiff's breach of contract claim for illegality and also dismissed the plaintiff's implied contract and unjust enrichment claims

11

> because "the existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing" [and the] plaintiff's unjust enrichment claim are only those directly related to the parties' performance or non-performance of the illegal and unenforceable contract.

Id. at 389-92 (citations omitted).[4]

Likewise, Plaintiff's Complaint asserts contract, unjust enrichment, and related claims arising from Plaintiff's alleged introductions that led to an equity investment, seeking a commission from that investment.  But Plaintiff was not registered as a broker under federal and state laws.  So the alleged contract and related equitable claims violates 15 U.S.C. § 78o(a)(1), and is thus void under 15 U.S.C. § 78cc(b).

### C.   The Complaint Alleges Plaintiff Violated State Securities Laws

Along with violating federal securities laws, the Complaint seeks recovery for violating state securities laws.  Under the "Colorado Securities Act," C.R.S. § 11-51-101 *et seq.*, a "person shall not transact business in this state as a broker-dealer or sales representative unless licensed or exempt from licensing under section 11-51-402."  C.R.S. § 11-51-401(1).[5]  Plaintiff had no Colorado or Tennessee broker-dealer or investment advisor license.  The Colorado Securities Act's definitions track those in the Exchange Act:

---

[4] See also Regional Props. v. Financial & Real Estate Consulting, 678 F.2d 552, 559 (5th Cir.1982)(holding an unregistered broker could not enforce agreements that were "perfectly lawful on their face" because performance of the unregistered broker led to a violation of the Exchange Act); Couldock & Bohan v. Societe Generale Sec., 93 F. Supp.2d 220, 223 (D. Conn. 2000)(holding unregistered broker could not enforce contract for "arranging purchases and sales of non-equity securities").

[5] The Tennessee Securities Act of 1980, Tenn. Code Ann. § 48-1-101 et seq., imposes the same preclusive restrictions.  See Tenn. Code Ann. § 48-1-109(a) & (c)(1).

DN 3477261.1

- "'Broker-dealer' means a person engaged in the business of effecting purchases or sales of securities for the accounts of others or in the business of purchasing and selling securities for the person's own account." C.R.S. § 11-51-201(2).  A person qualifies as a broker-dealer if the person "'attempted to effectuate purchases and sales of the interests in the'" issuer including, among other conduct, if the person "contacted potential investors to solicit their investment." Joseph v. Mieka Corp., 282 P.3d 509, 518 (Colo. App. 2012).[6]

Plaintiff claims to have attempted to effectuate purchases and sales of the interests in Xiant including, among other conduct, contacting potential investors to solicit their investment.  Doc. 1-1, ¶¶ 8, 18-20.

- "'Security' means any transferable share [or] investment contract . . . ." C.R.S. § 11-51-201(17).  To qualify as a "security" an investment contract needs only "the presence of an investment in a common enterprise that is premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." People v. Milne, 690 P.2d 829, 833 (Colo. 1984).[7]

Plaintiff claims to have effectuated a transaction in which "Cal-Maine paid Xiant Technology $4.5 Million in exchange for a certain percentage of the company with a contingent warrant." Id., ¶ 21.  This qualifies as a "security" under C.R.S. § 11-51-201(17).

In sum the Complaint seeks redress for a violation of C.R.S. § 11-51-401(1) and its Tennessee equivalent.  "Contracts in violation of statutory prohibitions are void." Amadeus Corp. v. McAllister, 232 P.3d 107, 109 (Colo. App. 2009).  And "equitable doctrines may not be used to enforce an illegal or void agreement." Harding v. Heritage Health Prods., 98 P.3d 945, 949 (Colo. App. 2004).  These mandates bar every claim set forth in Plaintiff's Complaint.  So the Court should dismiss the Complaint, with prejudice.

---

[6] See also Tenn. Code Ann. § 48-1-102(4) & (12).

[7] See also Tenn. Code Ann. § 48-1-102(20)(A); King v. Pope, 91 S.W.3d 314, 316 (Tenn. 2002).

13

## <u>CONCLUSION</u>

If Plaintiff wanted to maintain claims for brokering a securities transaction between Xiant and Cal-Maine, then Plaintiff should have kept his securities license and registration. Securities licensure laws exist to protect the public. Those protections would vanish if litigants like Plaintiff could maintain lawsuits like this. This Court should dismiss the Complaint, with prejudice.

Dated:  August 7, 2019.

Respectfully submitted:
SPENCER FANE LLP

*/s/ Scott C. Sandberg*
Scott C. Sandberg, #33566
John O'Brien, #15183
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203
Phone: (303) 839-3800 / Fax: (303) 839-3838
Email:  ssandberg@spencerfane.com; jobrien@spencerfane.com
**Attorneys for Xiant Technologies, Inc.**

DN 3477261.1

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2019, a copy of the foregoing was served via the court's CM/ECF, which will send notice to all counsel of record as follows:

Murray Ogborn                                    Michael P. Cross
Ogborn Mihm, LLP                              Ogborn Mihm, LLP
1700 Broadway, Suite 1900                  1700 Broadway, Suite 1900
Denver, Colorado 80290                       Denver, Colorado 80290
E: Murray.Ogborn@OMTrial.com          E: Mike.Cross@OMTrial.com


                                                        */s/Scott C. Sandberg*
                                                        Scott C. Sandberg

15