**IN THE UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF COLORADO**

CIVIL ACTION NO. 19-CV-01849-WJM-NRN

JOHN S. WILSON,
  Plaintiff,

v.

XIANT TECHNOLOGIES, INC.,
  Defendant.

---

**DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

---

Pursuant to Practice Standard III.D.1, undersigned counsel conferred with Plaintiff's counsel on September 30, 2019, to determine whether an amendment can correct the basis for this Motion. Xiant does not base this Motion on pleading defects that Plaintiff can cure by amendment and thus proceeded with this Motion.

Pursuant to Practice Standard III.D.3, Exhibit A is a public record showing Plaintiff's lack of securities licensure. The Court may consider "matters of public record without converting a motion to dismiss into a motion for summary judgment." Allen v. Clements, 930 F. Supp.2d 1252, 1258 (D. Colo. 2013). Attached as Exhibit B is the contract pled in ¶¶ 40-42, 46-50, 54-57, and 64-64 of Plaintiff's Amended Complaint. The Court may consider this document without conversion to summary judgment motion if the document is "(1) 'mentioned in the complaint,' (2) 'central to [the] claims [at issue],' and (3) not challenged as inauthentic." Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, 353 F. Supp.3d 1070, 1082 (D. Colo. 2018)(citation omitted). Otherwise, "'a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied.'" Id. at n.5.

## INTRODUCTION

No matter how he spins the details, Plaintiff seeks a commission for brokering a securities transaction without the legally required registrations and licenses. Each claim in the Amended Complaint seeks an unlawful commission. The common law illegality doctrine and 15 U.S.C. § 78cc(b) bar Plaintiff's claims.

Plaintiff's original Complaint owned up to this fact and claimed to have brokered a "massive equity deal." After Xiant moved to dismiss Plaintiff switched to claiming he brokered some kind of ▮▮▮▮▮▮ deal. But this slippery pleading leaves a fatal defect: Plaintiff does not and cannot plead any paid trials and instead seeks only a piece of a ▮▮▮▮▮▮▮▮▮▮▮▮. The Court should dismiss the Amended Complaint.

## ARGUMENT

### I. PLAINTIFF MAY NOT OBTAIN CONTRACTUAL OR EQUITABLE RECOVERY BY ALLEGING AN AGREEMENT THAT VIOLATES STATUTES

"Any contract that fails to comply with statutory requirements is void under Colorado law." Harper v. Mancos Sch. Dist., 837 F. Supp.2d 1211, 1222 (D. Colo. 2011).[1] "Contracts in violation of statutory prohibitions are void." Amadeus Corp. v. McAllister, 232 P.3d 107, 109

---

[1] Colorado law governs this case. In diversity actions the Court applies "the substantive law of the forum state, including its choice-of-law rules." Pepsi–Cola Bottling v. Pepsico, 431 F.3d 1241, 1255 (10th Cir. 2005). "Colorado applies the 'most significant relationship' test under the Restatement § 188 to determine which state's law should apply." Wells Fargo v. McQuate, 276 F. Supp.3d 1089, 1103-04 (D. Colo. 2016). Plaintiff came to Greeley, Colorado, to meet Xiant at its headquarters. Doc. 53, ¶ 12. He claims services from which Xiant could only benefit in Greeley and a commission which Xiant could only pay from Greeley. The Tennessee court found "Tennessee was not a 'conduit' for [Xiant's] business" and Xiant had "no intent to undertake continuing obligations within Tennessee." Doc. 23 at 12. Colorado has the most significant relationship and its law governs.

(Colo. App. 2009). For example, it "is well settled that an agreement to compensate an unlicensed real estate broker is illegal and unenforceable." Id. "The general rule is that where a statute expressly forbids a party from entering into a contract until performance of a precedent act and imposes a penalty on such party for attempting to enter into a forbidden contract, the contract is void ab initio." Platt v. Aspenwood Condominium Ass'n, 214 P.3d 1060, 1066 (Colo. App. 2009).

And "equitable doctrines may not be used to enforce an illegal or void agreement." Harding v. Heritage Health Prods., 98 P.3d 945, 949 (Colo. App. 2004). In such cases "'neither party to the contract is estopped from questioning it merely because the other party has parted with a property right or rendered service in reliance upon it.'" Id. (citation omitted). So "equitable doctrines such as promissory estoppel may not be used to enforce an agreement in favor of a wrongdoer." Equitex v. Unger, 60 P.3d 746, 750 (Colo. App. 2002). And as applied to unjust enrichment claims "[c]ompensation for services is not recoverable where the subject transaction is forbidden by law." Amadeus, 232 P.3d at 113.

> A court will not enforce a contract that violates public policy even if the failure to do so is "unfair" to one of the parties: "Countless instances might be cited where because of the refusal to enforce contracts which are against public policy one of the parties is left in a peculiarly advantageous position, or the contrary. With that fact the courts do not concern themselves."

Equitex, 60 P.3d at 750 (citation omitted).[2]

---

[2] In Roberts v. Fin. Technology, a Tennessee court noted that the "plaintiff seeks to enforce his illegal promise under contract, promissory estoppel, and *quantum meruit* causes of action." 2007 WL 3125289, *11 (M.D. Tenn. 2007). "Each one of these claims fails," the court held, because "'[a] contract made contrary to public policy or against the express mandate of a statute may not serve as the foundation of any action, either in law or in equity.'" Id. (citation omitted). "'No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out.'" Id.

## II. PLAINTIFF ALLEGES ILLEGAL OBLIGATIONS

### A. Plaintiff Alleges Federal Securities Laws Violations

Plaintiff seeks compensation for acting as an unregistered broker and investment adviser in violation of federal securities laws. Under § 15(a)(1) of the Securities Exchange Act of 1934 ("**Exchange Act**"):

> It shall be unlawful for any broker or dealer which is either a person other than a natural person or a natural person not associated with a broker or dealer which is a person other than a natural person . . . to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered in accordance with subsection (b) of this section.

15 U.S.C. § 78o(a)(1). And under the Investment Advisers Act of 1940 ("**Investment Advisers Act**"), "it shall be unlawful for any investment adviser, unless registered under this section, to make use of the mails or any means or instrumentality of interstate commerce in connection with his or its business as an investment adviser." 15 U.S.C. § 80b-3(a).

While registered before, Plaintiff has had no registration under the Exchange Act, Investment Advisers Act, or in any state since 2015. See Exhibit A.[3] Yet his Amended Complaint seeks compensation for services beginning in 2017 covered by both Acts. In other words, the Amended Complaint seeks to enforce an illegal agreement.

### 1. Plaintiff Claims He Acted as a "Broker" Under the Exchange Act

Plaintiff seeks to recover a commission for effecting a securities transaction, meaning he claims unregistered broker status under the Exchange Act. "The term 'broker' means any person

---

[3] Exhibit A is public record of the Financial Industry Regulatory Authority, Inc. (FINRA), which publishes federal and state registration and licensing information.

4

EXHIBIT 1  Page 4 of 16

engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A). "The definition of 'broker' employed by § 78c(a)(4) is broad, and includes acts which generally serve to encourage investors to purchase securities." George K. Baum Advisors v. Sprint Spectrum, 2013 WL 5719506, *16 (D. Kan. 2013).[4] Courts consider several factors in determining what meets this definition including

> (i) whether the person works as an employee of the securities' issuer; (ii) whether he receives a commission rather than a salary; (iii) whether he sells or has sold the securities of another issuer; (iv) whether he participates in negotiations between the issuer and investor; (v) whether he provides advice or a valuation as to the merit of an investment; and (vi) whether he actively, rather than passively, finds investors.

Sun River Energy v. Nelson, 2013 WL 1222391, *5 (D. Colo. 2013).  See also George, 426 F.3d at 797; S.E.C. v. Hansen, 1984 WL 2413, *10 (SN.Y. 1984).  But a court need only find that a person "was regularly involved in communications with and recruitment of investors for the purchase of securities." S.E.C. v. StratoComm, 2 F. Supp.3d 240, 262 (N.D.N.Y. 2014).  In S.E.C. v. Parrish, 2012 WL 4378114 (D. Colo. 2012), the court found that an individual "acted as an unregistered broker-dealer in violation of Section 15(a)(1) of the Exchange Act" solely because he "directly solicited investors, receiv[ed] transaction-based compensation, and indirectly solicited investors." Id. at *4.

Among all these factors, "[t]ransaction-based compensation, or commissions are one of the hallmarks of being a broker-dealer." Cornhusker Energy Lexington v. Prospect Street Ventures, 2006 WL 2620985, *6 (D. Neb. 2006).  See also Landegger v. Cohen, 2013 WL 5444052, *5 (D. Colo. 2013)("courts have also held that the transaction-based compensation factor, is one of the

---

[4] See also S.E.C. v. George, 426 F.3d 786, 797 (6th Cir. 2005)(person who "encouraged people to invest" in securities was a broker, even though not employed by seller).

5

EXHIBIT 1                                                                                              Page 5 of 16

hallmarks of broker status"); Sun River, 2013 WL 1222391, *5 (same). Plaintiff seeks a transaction-based commission for his brokerage services. Doc. 53, ¶¶ 16, 30, 54, 56.

Litigants with a "'history of selling the securities of other issuers, involvement in advice to investors and active recruitment of investors'" must register as a broker under the Exchange Act. George, 426 F.3d at 797 (citation omitted). Other activities subjecting litigants to broker registration requirements include "'analyzing the financial needs of an issuer, recommending or designing financing methods . . . discussion of details of securities transactions, making investment recommendations, and prior involvement in the sale of securities.'" Salamon v. Teleplus Enterprises, 2008 WL 2277094, at *8 (D.N.J. 2008)(citing cases). Until 2015 Plaintiff was registered as a securities broker. See Exhibit A. And he claims to have come to Xiant as "a former investment banker [and] a highly regarded financial commentator and author whose work has included . . . a subscription-based investing blog." Doc. 53, ¶ 10. And Plaintiff claims to have analyzed Xiant's financial needs and devised financing methods. Id., ¶ 19.

Persons who "plainly were not employees" but provide "consulting services" qualify as brokers. S.E.C. v. Martino, 255 F. Supp.2d 268, 283 (S.D.N.Y. 2003). See also Hansen, 1984 WL at *11 (finding violation of Exchange Act's broker provision because person "was not a salaried [] employee, but rather received commissions"). Plaintiff claims he provided consulting services to Xiant, not that he acted as Xiant's employee (he did not). Doc. 53 ¶¶ 16, 30, 54, 56.

Plaintiff also remains bound by his claim that he "became involved in the financial valuation of the company" and that "Defendant retained Plaintiff's services to identify and secure

6

EXHIBIT 1                                              Page 6 of 16

investors." Doc. 1-1 ¶ 13; Doc. 40 ¶ 3.a.[5]  Providing "advice or a valuation as to the merit of an investment" and finding investors are hallmarks of § 78c(a)(4)'s broad definition of broker.  Sun River Energy v. Nelson, 2013 WL 1222391, *5 (D. Colo. 2013).

### 2. Plaintiff Claims He Acted as an "Investment Adviser" Under the Investment Advisers Act

> "Investment adviser" means any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities.

15 U.S.C. § 80b-2(10).  "Thus, if a person receives an economic benefit from a business that includes the giving of investment advice, that person falls within the initial, broad definition of 'investment adviser.'"  Thomas v. Metropolitan Life Ins., 631 F.3d 1153, 1164 (10th Cir. 2011).  "This definition is sufficiently broad to 'cover every person who for compensation gives advice with respect to securities, from the highest grade investment counselor who renders personalized service to the publisher of the lowliest tipster sheet.'"  Johnston v. CIGNA, 916 P.2d 643, 647 (Colo. App. 1996)(citation omitted).  See also S.E.C. v. Blavin, 760 F.2d 706, 713 (6th Cir.

---

[5] The Court may consider Plaintiff's admissions in the original Complaint and Scheduling Order. "[A]s a general matter, a party is able to refer to its opponents' contradictory pleadings as evidence that the original factual recitation was correct."  Echostar Sat. v. Splash Media Partners, 2010 WL 3873282, *13 (D. Colo. 2010).  See also Raulie v. U.S., 400 F.2d 487, 526 (10th Cir. 1968). "A party thus cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories."  U.S. v. McKeon, 738 F.2d 26, 31 (2nd Cir. 1984).  And a "plaintiff cannot escape the binding effect of the pretrial order by raising new issues in a response to the defendant's" dispositive motion.  Hullman v. Bd. of Trustees, 950 F.2d 665, 667 (10th Cir. 1991).

1985)("Because Blavin failed to register with the Commission, he was prohibited from selling investment advice, and was not entitled to keep the fees").

Plaintiff claims to have advised Xiant as to the value of its securities. Docs. 53, ¶ 19; 1-1, ¶¶ 13, 20. Plaintiff also claims to have advised Xiant as to the advisability of selling its securities. Docs. 53, ¶ 25; 1-1, ¶¶ 13, 18, 20. And Plaintiff claims to "Defendant retained Plaintiff's services to identify and secure investors." Doc. 40, ¶ 3.a. Plaintiff claims he acted as an investment adviser.

### 3. Plaintiff Claims He Used Interstate Commerce to Effect Securities Transactions

A "security" under the Exchange Act includes any "investment contract." 15 U.S.C. § 78c(10). An "investment contract" under this definition means "'(1) an investment, (2) in a common enterprise, (3) with a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others.'" S.E.C. v. Scoville, 913 F.3d 1204, 1220 (10th Cir. 2019)(citation omitted). See also Stone v. Kirk, 8 F.3d 1079, 1085 (6th Cir. 1993). "The federal definition of securities . . . is purposely broad 'to regulate investments, in whatever form they are made and by whatever name they are called.'" People v. Thompson, 2018 WL 2976280, *3 (Colo. App. 2018)(citing Reves v. Ernst & Young, 494 U.S. 56, 61 (1990)). Congress made the definition "broad enough to regulate 'virtually any instrument that might be sold as an investment.'" S.E.C. v. Zada, 787 F.3d 375, 379 (6th Cir. 2015)(citation omitted).

Plaintiff claims a commission from a transaction in which ▇▇▇▇ made a ▇▇▇▇ investment in a common enterprise (Xiant's technology) with a reasonable expectation of profits derived from the entrepreneurial or managerial efforts of others (Xiant's management). The sole contract providing for ▇▇▇▇'s payment in the amount claimed by Plaintiff is ▇▇▇▇ ▇▇▇▇ attached as Exhibit B. Plaintiff's claims hinge on that

8

EXHIBIT 1                Page 8 of 16

Agreement. Doc. 53, ¶¶ 40-42, 46-50, 54-57, and 64-64. And that Agreement is a quintessential securities transaction and the sole source of Plaintiff's claimed commission. Id.[6]

Plaintiff remains bound by his claim to have performed services creating "a massive equity deal that could equal or exceed all equity investments made prior to Plaintiff's involvement." Doc. 1-1, ¶ 19.[7] "Specifically," Plaintiff claims to have effectuated a transaction in which "▮▮▮ paid Xiant Technology ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Id., ¶ 21. See also Doc. 40, ¶ 3.a ("Plaintiff secured investments for Defendant"). A ▮▮▮▮▮▮▮▮▮▮▮▮ is synonymous with investment in a common enterprise (by ▮▮▮▮) with a reasonable expectation of profits derived from the entrepreneurial or managerial efforts of others (Xiant). A "warrant" means an "instrument granting the holder a long-term . . . option to buy shares at a fixed price. It is commonly attached to preferred stocks or bonds." Black's Law Dictionary (11th ed. 2019). In other words, Plaintiff claims to have used interstate commerce to effect a securities transaction and seeks recovery, without registration, for that transaction.

Any effort by Plaintiff to disclaim these allegations due to the Amended Complaint's switch to a ▮▮▮▮ theory should fall flat. The Amended Complaint alleges only securities expertise and nothing about technological expertise that would enable a ▮▮▮▮ contract. Doc. 53, ¶ 10. Plaintiff claims he assisted Xiant with ▮▮▮▮▮▮▮▮ and concedes that the revenue generation vehicles included ▮▮▮▮▮▮▮▮▮▮▮▮▮ solicited by Plaintiff. Id.

---

[6] Plaintiff claims this transaction spanned multiple states, satisfying the interstate commerce requirement. Doc. 53, ¶¶ 1, 2, 12, 27; Exhibit B.

[7] See footnote 5, supra.

¶¶ 7, 11. Plaintiff claims he solicited "a possible contractual relationship with Xiant" and ▮▮ and concedes that possible contractual relationships included "▮▮▮s investment in equity securities of Xiant." Id. ¶¶ 24, 29, 34. The ultimate deal Plaintiff claims to have brokered became one in which "Xiant will sell to ▮▮▮" and that the ▮▮▮ contract was a "▮▮▮." Id. ¶¶ 40, 49.

Most importantly, Plaintiff seeks a commission from the ▮▮▮▮▮▮. Plaintiff seeks 5% of only one contract: the ▮▮▮▮ attached as Exhibit B. ▮▮▮▮ touted in the Amended Complaint ▮▮▮▮▮▮▮▮ fees. Doc. 53, ¶¶ 35-37. After changing stories to a ▮▮▮ deal Plaintiff does not and cannot allege successful completion of the ▮▮▮▮▮▮.

This leaves Plaintiff grasping at the implausible notion that "Xiant's attempt to structure the agreement to include ▮▮▮ through a transfer of ▮▮▮ on a dramatically inflated valuation was intended to evade its payment obligation to Wilson." Doc. 53, ¶ 50. That claim cannot salvage the Amended Complaint.

First, that claim changes nothing about the underlying transaction for which Plaintiff seeks a commission. As shown in Exhibit B and conceded in the Second Amended Complaint, the transaction was solely a securities transaction. Despite his unfounded guesses about the

10

EXHIBIT 1     Page 10 of 16

transaction's intent and value, Plaintiff still seeks a commission for brokering a securities transaction and that commission remains illegal. Second, to "'survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Brickert v. Deutsche Bank, 380 F. Supp.3d 1127, 1134 (D. Colo. 2019)(citing Iqbal and Twombly). Plaintiff tars ▬▬▬▬▬▬▬▬▬▬▬▬ and Xiant with falsifying a multimillion dollar stock investment to avoid incurring a few hundred thousand in fees. Nothing in the Amended Complaint provides a scintilla of fact that could make this sensational claim factually plausible. To the contrary, Plaintiff disclaims any knowledge of the ▬▬▬▬ Xiant negotiations. Doc. 53, ¶ 28.

### B. Along with Common Law Illegality, Plaintiff Alleges a Contract Barred by Federal Statute

The Exchange Act mandates dismissal. Under § 29(b) of the Exchange Act

> Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract . . . heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void . . . as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract.

15 U.S.C. § 78cc(b).

In Torsiello Capital Partners v. Sunshine State Holding, 2008 WL 8971330 (N.Y. 2008), a plaintiff sued a corporation under an alleged contract for the plaintiff's financial advisory and investment services. See id. at *1. The plaintiff claimed to have "made numerous telephone calls to potential purchasers, and held meetings with some of the potential purchasers" and, after the corporation sold its stock, the plaintiff claimed entitlement to 3.5% of the sale price. Id. at *2. The corporation asserted illegality and § 29(b) defenses, arguing the plaintiff "could not legally

11

EXHIBIT 1          Page 11 of 16

perform the services that it agreed to perform because it was not a registered securities broker during the contract term and that therefore the contract is void and unenforceable pursuant to Section 29 of the" Exchange Act. Id. at *3. The court agreed, holding the plaintiff "was retained to act, and did act, as a securities broker with regard to the marketing and proposed private sale of [the corporation's] securities." Id. at *9. The court stressed that the contract provided "a fee based on a percentage of the gross value of any securities transaction." Id. "Inasmuch as the contract required [the plaintiff] to provide the types of services that require licensing by the SEC as a securities broker, and they did perform such services while not so licensed, the contract is void ab initio" under § 29(b). Id. at *11. And the plaintiff's "failure to register as a securities broker also renders the contract unenforceable under the common law doctrine of illegality." Id. at **12-13.

Likewise, the Amended Complaint claims Plaintiff made calls and arranged meetings with potential Xiant investors and seeks a percentage of the equity investment. But Plaintiff could not legally perform these services because he was not a registered securities broker during the alleged contract term, so § 29(b) voids the alleged contract and renders it unenforceable. The alleged contract provided a fee based on a percentage of the transaction's gross value. Because the alleged contract required Plaintiff to provide the types of services that require licensing by the SEC as a securities broker, and Plaintiff allegedly performed such services while unlicensed, the alleged contract is void ab initio under § 29(b) and the illegality doctrine.

In Lawrence v. Richman Group, 407 F. Supp.2d 385 (D. Conn. 2005), a plaintiff sued a company for breach of contract, unjust enrichment, and related claims, alleging breach of an agreement for investment services "thus depriving him of commissions." Id. at 386. The alleged contact, "based on oral and written communications" involved the plaintiff introducing the

12

EXHIBIT 1    Page 12 of 16

company to investors. Id. at 388 n.4. But the plaintiff "was 'not registered as a broker[ ] in accordance with all applicable federal and state laws.'" Id. at 389. "Accordingly," the court ruled, "the contract plaintiff alleges . . . violates 15 U.S.C. § 78o(a)(1), is thus void pursuant to 15 U.S.C. § 78cc(b)." The court dismissed the plaintiff's breach of contract claim for illegality and also dismissed the plaintiff's implied contract and unjust enrichment claims

> because "the existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing" [and the] plaintiff's unjust enrichment claim are only those directly related to the parties' performance or non-performance of the illegal and unenforceable contract.

Id. at 389-92 (citations omitted).[8]

Likewise, Plaintiff's Amended Complaint asserts contract, unjust enrichment, and related claims arising from Plaintiff's alleged introductions that led to an equity investment, seeking a commission from that investment. But Plaintiff was not registered as a broker under federal or state laws. So the alleged contract and related equitable claims violates 15 U.S.C. § 78o(a)(1), and are thus void under 15 U.S.C. § 78cc(b).

### C. **Plaintiff Claims He Violated State Securities Laws**

Along with violating federal securities laws, the Amended Complaint seeks recovery for violating state securities laws. Under the "Colorado Securities Act," C.R.S. § 11-51-101 *et seq.*, a "person shall not transact business in this state as a broker-dealer or sales representative unless

---

[8] See also Regional Props. v. Fin. & Real Estate Consulting, 678 F.2d 552, 559 (5th Cir.1982)(holding an unregistered broker could not enforce agreements that were "perfectly lawful on their face" because performance led to an Exchange Act violation); Couldock & Bohan v. Societe Generale Sec., 93 F. Supp.2d 220, 223 (D. Conn. 2000)(holding unregistered broker could not enforce contract for "arranging purchases and sales of non-equity securities").

licensed or exempt from licensing under section 11-51-402." C.R.S. § 11-51-401(1).[9] Plaintiff had no Colorado or Tennessee broker-dealer or investment advisor license. The Colorado Securities Act's definitions track those in the Exchange Act:

- "'Broker-dealer' means a person engaged in the business of effecting purchases or sales of securities for the accounts of others or in the business of purchasing and selling securities for the person's own account." C.R.S. § 11-51-201(2). A person qualifies as a broker-dealer if the person "'attempted to effectuate purchases and sales of the interests in the'" issuer including, among other conduct, if the person "contacted potential investors to solicit their investment." Joseph v. Mieka Corp., 282 P.3d 509, 518 (Colo. App. 2012).[10]

Plaintiff claims to have effectuated a purchase of an interest in Xiant including, among other conduct, contacting potential investors to solicit their investment. Doc. 53, ¶¶ 18, 22-24.

- "'Security' means any transferable share [or] investment contract . . . ." C.R.S. § 11-51-201(17). To qualify as a "security" an investment contract needs only "the presence of an investment in a common enterprise that is premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." People v. Milne, 690 P.2d 829, 833 (Colo. 1984).[11]

Plaintiff claims to have effectuated a transaction causing ███████s investment in a common enterprise (Xiant) premised on a reasonable expectation of profits derived from the entrepreneurial or managerial efforts of others (Xiant management). Doc. 53, ¶¶ 40-42, 46-50, 54-57, and 64-64; Exhibit B.

In sum the Amended Complaint seeks redress for a violation of C.R.S. § 11-51-401(1) and its Tennessee equivalent. "Contracts in violation of statutory prohibitions are void." Amadeus Corp. v. McAllister, 232 P.3d 107, 109 (Colo. App. 2009). And "equitable doctrines may not be

---

[9] The Tennessee Securities Act of 1980, Tenn. Code Ann. § 48-1-101 et seq., imposes the same preclusive restrictions. See Tenn. Code Ann. § 48-1-109(a) & (c)(1).

[10] See also Tenn. Code Ann. § 48-1-102(4) & (12).

[11] See also Tenn. Code Ann. § 48-1-102(20)(A); King v. Pope, 91 S.W.3d 314, 316 (Tenn. 2002).

used to enforce an illegal or void agreement." <u>Harding v. Heritage Health Prods.</u>, 98 P.3d 945, 949 (Colo. App. 2004). These mandates bar every claim set forth in Plaintiff's Amended Complaint. So the Court should dismiss the Amended Complaint, with prejudice.

## CONCLUSION

If Plaintiff wanted to maintain claims for brokering a securities transaction between Xiant and ▮▮▮▮ then Plaintiff should have kept his securities license and registration. Securities licensure laws exist to protect the public. Those protections would vanish if litigants like Plaintiff could maintain lawsuits like this. The Court should dismiss the Amended Complaint.

Dated: October 1, 2019.

          Respectfully submitted:
          SPENCER FANE LLP

          <u>*/s/ Scott C. Sandberg*</u>
          Scott C. Sandberg, #33566
          John O'Brien, #15183
          Spencer Fane LLP
          1700 Lincoln Street, Suite 2000
          Denver, Colorado 80203
          Phone: (303) 839-3800 / Fax: (303) 839-3838
          Email: ssandberg@spencerfane.com; jobrien@spencerfane.com
          **Attorneys for Xiant Technologies, Inc.**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 1, 2019, a copy of the foregoing was served via the court's CM/ECF, which will send notice to all counsel of record as follows:

| | |
|---|---|
| Murray Ogborn<br>Ogborn Mihm, LLP<br>1700 Broadway, Suite 1900<br>Denver, Colorado 80290<br>E: Murray.Ogborn@OMTrial.com | Michael P. Cross<br>Ogborn Mihm, LLP<br>1700 Broadway, Suite 1900<br>Denver, Colorado 80290<br>E: Mike.Cross@OMTrial.com |

                                                                     /s/Scott C. Sandberg
                                                                     Scott C. Sandberg