IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Case No. 19-cv-1849-WJM-NRN

JOHN S. WILSON,

    Plaintiff,

v.

XIANT TECHNOLOGIES, INC.,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Xiant Technologies, Inc.'s Motion for Summary Judgment ("Motion") (ECF No. 115). For the following reasons, the Motion is granted.

### I. LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. PROCEDURAL MATTERS

The undersigned's WJM Revised Practice Standards impose the following requirement on a summary judgment movant:

> All motions for summary judgment . . . must contain a section entitled "Movant's Statement of Material Facts." This Statement shall set forth in simple, declarative sentences, all of which are separately numbered and paragraphed, each material fact the movant believes supports movant's claim that movant is entitled to judgment as a matter of law. Each statement of fact must be accompanied by a specific reference to supporting evidence in the record.

WJM Revised Practice Standards III.F.3. Accordingly, Defendant filed a Statement of Material Facts in the Motion. (ECF No. 115 at 2–9.) The WJM Revised Practice Standards further clarify the following:

> Any party opposing the motion for summary judgment . . . shall provide a "Response to Movant's Material Facts" in its brief, admitting or denying the asserted material facts set forth by the movant . . .

WJM Revised Practice Standards III.F.4. Plaintiff John Wilson did not include a Response to Movant's Material Facts in his Response, instead launching directly into his version of events. (*See* ECF No. 126.) Given Plaintiff's failure to comply with the WJM Revised Practice Standards, the facts in the Statement of Material Facts (ECF No.

115) are deemed admitted.[1]  *See Race v. Bd. of Cnty. Comm'rs*, 2017 WL 3334647, at *1 n.1 (D. Colo. Aug. 4, 2017) (deeming defendants' statement of facts admitted where plaintiffs fail to provide a paragraph-by-paragraph response to defendants' statement "but instead jump directly to their version of the story, presented in typical narrative form").

### III. BACKGROUND[2]

Defendant is a corporation located in Greeley, Colorado, which develops LED light technology for agricultural and poultry applications.  (ECF No. 115 ¶ 13.)  Plaintiff is a former investment banker and financial advisor.  (*Id.* ¶ 11–12.)  In August 2017, Defendant contacted Plaintiff about providing valuation and consulting services for Defendant's business.  (*Id.* ¶ 17.)  Plaintiff asserts that the parties had an oral contract which provided that Defendant would pay Plaintiff 5% of any income earned as a result of any paid trial, supply, or licensing agreement brokered by Plaintiff.  (*Id.* ¶¶ 9, 17–20.)

Plaintiff placed Defendant in contact with an agri-business company called Cal-Maine.  (*Id.* ¶ 18.)  On May 24, 2018, Defendant and Cal-Maine executed a Stock Purchase Agreement, wherein Cal-Maine agreed to purchase Defendant's stock for approximately $4.2 million.  (*Id.* ¶ 34; ECF No. 115-6.)  Cal-Maine and Defendant then signed a Memorandum of Understanding for Pilot Project, Business Relationships and Investment ("MOU").  (ECF No. 115 ¶ 41.)  The MOU provides for the process by which

---

[1] This finding does not impact the Court's ruling, however, as Plaintiff does not appear to contest Defendant's facts, but focuses on the interpretation of such facts.

[2] The following factual summary is based on the parties' Motions and documents submitted in support thereof.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

Defendant and Cal-Maine may negotiate and enter into licensing agreements in the future.  (*Id.* ¶¶ 41–51.)

Plaintiff initiated this action on September 14, 2018 in Tennessee state court.  (ECF No. 1-1.)  The case was removed to the U.S. District Court for the Eastern District of Tennessee on October 11, 2018 and transferred to this Court on June 26, 2019.  (ECF No. 1.)  On September 30, 2019, Plaintiff filed his Second Amended Complaint, which is the operative complaint.  (ECF No. 63.)  He brings claims for breach of contract and unjust enrichment based on Defendant's failure to compensate him 5% of the $4.2 million contract with Cal-Maine.[3]  (*Id.*)

Defendant filed its Motion on August 20, 2020, seeking summary judgment on both claims.  (ECF No. 115.)  Plaintiff filed a response on September 28, 2020, and Defendant filed a reply on October 19, 2020.  (ECF Nos. 128 & 141.)

## IV. ANALYSIS

### A.   Breach of Contract Claim

The basis of Plaintiff's breach of contract claim is that Defendant had agreed to pay him 5% of any income earned through a paid trial, supply, or licensing agreement, but impermissibly refused to compensate him upon execution of the Stock Purchase Agreement with Cal-Maine.  (ECF No. 53 ¶¶ 53–61.)

Defendant argues that it should be granted summary judgment on the breach of contract claim because the Stock Purchase Agreement was a securities transaction, and federal and state law bar a person who is not a registered stockbroker or

---

[3] The Second Amended Complaint states that the contract was for $4.5 million, but the parties now do not appear to dispute that the Stock Purchase Agreement involved a sum of approximately $4.2 million.  (ECF No. 115 at 19; ECF No. 126 at 17.)

investment advisor from receiving a commission on a securities transaction. (ECF No. 115 at 9; s*ee also* 15 U.S.C. §§ 78o(a)(1), 80b-3(a), 29(b); Colo. Rev. Stat. § 11-51-401(1).) Because "[c]ontracts in violation of statutory provisions are void," *Amadeus Corp. v. McAllister*, 232 P.3d 107, 109 (Colo. App. 2009), Defendant argues that any agreement to pay Plaintiff a commission based on the Stock Purchase Agreement is unenforceable.[4] (ECF No. 116 at 9.)

A "motion for summary judgment allows for contract interpretation as a matter of law." *Stroh Ranch Dev. v. Cherry Creek S. Metro. Dist.*, 935 F. Supp. 2d 1052, 1055 (D. Colo. 2013). Thus, where a contract term "unambiguously resolves the parties' dispute, the interpreting court's task is over." *Id.* at 1060. Further, an unambiguous contract term "cannot be varied by extrinsic evidence." *Id.*

Defendant attaches a copy of the Stock Purchase Agreement to its Motion. (ECF No. 115-6.) The agreement, titled "Common Stock and Warrant Purchase Agreement," demonstrates that Cal-Maine purchased common stock and warrants from Defendant for a total of $4,272,489.91. (*Id.* at 19.) The Stock Purchase Agreement does not provide for a paid trial, supply, or licensing, which would entitle Plaintiff to a commission. (*See generally id.*)

In the absence of evidence to the contrary, the Court rejects Plaintiff's invitation to speculate that the Stock Purchase Agreement may have included a paid trial, supply, or licensing agreement. Plaintiff's unsupported assertion that the Stock Purchase

---

[4] Notably, Defendant does not deny the existence of a contract with Plaintiff for commission on a supply and licensing agreement, though it omits such facts from its Statement of Facts. The relevant facts and thrust of Defendant's argument—that an agreement to pay Plaintiff for the Stock Purchase Agreement is unenforceable—tend to suggest the existence of some contract, albeit no actionable breach at this point.

Agreement contained provisions for which he could be compensated is not sufficient to create a genuine issue of material fact.  *Landegger v. Cohen*, 5 F. Supp. 3d 1278, 1280 (D. Colo. 2013) ("Although a court must construe the facts in the light most favorable to the plaintiff as the nonmoving party, 'a plaintiff's version of the facts must find support in the record.'").

Additionally, in its earlier Order denying Defendant's Motion to Dismiss, the Court noted that "if [Plaintiff] was not a registered stockbroker or investment advisor at the relevant times, he could not lawfully be compensated for his role as a stockbroker or investment advisor on the Cal-Maine deal."  (ECF No. 105 at 6.)  In that Order, the Court emphasized that it only denied the Motion to Dismiss because it was bound to accept Plaintiff's well-pleaded allegations as true, though proof to the contrary would almost certainly defeat Plaintiff's claims.  (*Id.*)  Having reviewed the evidence, it is clear that Plaintiff is not entitled to payment based on the Stock Purchase Agreement, as the evidence is clear that it was a securities transaction, and Plaintiff was not a licensed securities broker or investment advisor at the relevant time.  S*ee* 15 U.S.C. §§ 78o(a)(1), 80b-3(a), 29(b); Colo. Rev. Stat. § 11-51-401(1).

Plaintiff further argues that Defendant and Cal-Maine are in the process of negotiating a supply and licensing agreement pursuant to the terms of the MOU, of which proceeds Plaintiff would be entitled to 5%.  (ECF No. 126 at 17–18.)  He does not state or provide evidence, however, that Defendant and Cal-Maine have entered into such agreement at this time.  (*See generally id.*)  Rather, he encourages the Court to assume that such agreement will eventually be executed, that Defendant will breach its promise to provide Plaintiff a 5% commission on the proceeds of that agreement, and

that his 5% share will be approximately $225,000 as demanded in his Second Amended Complaint. (ECF No. 126 at 18–20.)

To the extent that Plaintiff asserts that the MOU provides a basis for a breach of contract claim based on anticipatory repudiation, such argument is speculative and premature, given that Plaintiff concedes that Defendant and Cal-Maine have not yet entered into a contract based on the MOU. (*Id.* at 20.) Accordingly, the Court grants Defendant's Motion as to the breach of contract claim.[5]

## B.   Unjust Enrichment Claim

Plaintiff alleges, alternatively to his breach of contract claim, that Defendant was unjustly enriched by reaping the benefit of the Stock Purchase Agreement, which relied on Plaintiff's efforts. (ECF No. 63 ¶¶ 62–66.) He asserts that the Cal-Maine agreement provided Defendant with revenue and "past and future license fees and equipment purchases." (*Id.* ¶ 65.) Plaintiff argues that his "efforts resulted in a $4.2 million infusion of funds and a forthcoming multi-million dollar Supply and License Agreement," which Defendant would not otherwise have procured. (ECF No. 126 at 24.)

Defendant contends that it is entitled to summary judgment on the unjust enrichment claim because Plaintiff may not rely on equitable doctrines to enforce an illegal or void agreement, and any claim based on a potential future contract is not compensable. (ECF No. 115 at 17–21.)

---

[5] Assuming the validity of the contract between Plaintiff and Defendant, however, this ruling will not preclude Plaintiff from filing a new action if and when a supply and licensing agreement with Cal-Maine is executed, provided that Defendant does not fulfill its obligation to Plaintiff under the contract. In that event, the parties would be well served by reaching a fair resolution of that new and separate legal dispute without the need for the filing of a new action.

"Unjust enrichment is a form of quasi-contract or a contract implied in law." *Salzman v. Bachrach*, 996 P.2d 1263, 1265 (Colo. 2000). A court will deny recovery under this theory, however, when doing so would be "expressly contrary to the provisions of the written contract between the parties." *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 445 (Colo. 2000) (citing *Stanford v. Ronald H. Mayer Real Estate, Inc.*, 849 P.2d 921, 923 (Colo. App. 1993)). Moreover, "equitable doctrines may not be used to enforce an illegal or void agreement." *Harding v. Heritage Health Prods.*, 98 P.3d 945, 949 (Colo. App. 2004).

As discussed above, assuming the existence and validity of the commission agreement between Plaintiff and Defendant, Plaintiff may not claim a commission based on the Stock Purchase Agreement. Plaintiff may not attempt to recover the equivalent of a commission for the Stock Purchase Agreement by recasting the same issue under the equitable theory of unjust enrichment. *See Harding*, 98 P.3d at 949. Accordingly, his unjust enrichment claim based on the Stock Purchase Agreement fails.

To the extent that Plaintiff argues that the potential in the future for a licensing agreement has unjustly enriched Defendant, this argument similarly fails. Even Plaintiff concedes that no such deal presently exists, referring to the supply and licensing agreement as "forthcoming." (ECF No. 126 at 24.) As his entitlement to a commission turns on whether Defendant and Cal-Maine ultimately execute an agreement which qualifies Plaintiff for such commission, he may not assert an unjust enrichment claim at this time. *See Fallenius v. Walker*, 787 P.2d 203, 205 (Colo. App. 1989) (finding unjust enrichment claim unavailable for "a commission contingent upon the closing of the

8

sale"). The Court therefore grants Defendant's Motion as to the unjust enrichment claim.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion (ECF No. 115) is granted;

2. The Clerk shall enter judgment in favor of Defendant Xiant Technologies, Inc. and against Plaintiff John Wilson;

3. Defendant shall have its costs upon compliance with D.C.COLO.LCivR 54.1; and

4. The Clerk shall terminate this case.

Dated this 28th day of April, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge